UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| JERRY J. FLETCHER, II, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. |
| | ) | 5:09-CV-070-BG |
| | ) | ECF |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**

Plaintiff Jerry J. Fletcher, II, appeals the decision of the Commissioner of Social Security denying his applications for Supplemental Security Income and Disability Insurance Benefits. This court has reviewed Fletcher's appeal under the standard set forth in 42 U.S.C. § 405(g) and has determined that the Commissioner's decision is supported by substantial evidence, was reached through the application of proper legal standards, and should be affirmed. This court therefore recommends that the District Court dismiss Fletcher's appeal.

**I.   Legal Standards**

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." *See* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled "only if his physical or mental impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A), 42 U.S.C. § 1382c(a)(3)(B); *see* 20 C.F.R. §§ 404.1505, 416.911 (2009).

The Commissioner's decision as to whether a claimant is "disabled" under the Act is reached by application of a five step sequential evaluation. 20 C.F.R. §§ 404.1520, 416.920; *see Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000). Under the sequential evaluation, the Administrative Law Judge ("ALJ") decides whether the applicant: (1) is not working in substantial gainful activity; (2) has a severe impairment; (3) has an impairment that meets or equals a listed impairment in Appendix I of the regulations; (4) has an impairment that prevents him from doing past relevant work; and (5) has an impairment that prevents him from doing any other work. *Id*. At the fifth step of the sequential evaluation the burden is on the Commissioner to show that, considering the claimant's residual functional capacity, age, education, and past work experience, he can perform work that exists in significant numbers in the national economy. *Id*. The Commissioner's decision was reached in this case at the fifth step of the sequential evaluation.

The court's role in reviewing a Social Security appeal is limited to determining whether the Commissioner applied the proper legal standards and whether the record contains substantial evidence that supports the Commissioner's decision. *Audler v. Astrue*, 501 F.3d 446, 447 (5th Cir. 2007). Substantial evidence is "more than a mere scintilla" and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (internal quotations and citation omitted).

**II.     Statement of the Case**

Fletcher, who previously worked as a laboratory technician, an electronics technician, a maintenance technician, and a computer laboratory technician, was forty-six years old on the date he claims he became disabled. (Tr. 31-32, 86-92, 120.) He claimed in application documents that bipolar disorder, hepatitis C, and irritable bowel syndrome limited his ability to work. (Tr. 113.)

The ALJ determined at the fifth step of the sequential disability evaluation that Fletcher was not disabled. In reaching this decision, the ALJ first determined that Fletcher retained the Residual Functional Capacity ("RFC")[1] to perform the physical demands of work at all exertional levels, but his nonexertional impairments limited him to non-complex jobs that require no interaction with the general public and only superficial interaction with supervisors and coworkers. (Tr. 18.) The ALJ then determined, based on testimony from a vocational expert, that there were a significant number of jobs in the national economy that Fletcher could perform despite his mental limitations and that he was therefore not disabled. (Tr. 20.)

Fletcher does not contest the ALJ's determination that he is capable of performing the physical demands of work at all exertional levels. Fletcher argues instead that the ALJ's determination regarding his mental RFC is not supported by substantial evidence and points to an assessment completed by Leela Reddy, M.D., a State agency consultant, who made determinations regarding Fletcher's mental impairments. (Tr. 319-32.) Dr. Reddy determined that Fletcher did not meet the criteria of a listed impairment. *See id.* She noted that Fletcher had been diagnosed with bipolar disorder with manic episodes and determined that his mental illness imposed mild limitations on his activities of daily living, mild limitations in maintaining social functioning, moderate difficulties in maintaining concentration, persistence, or pace, and that he had experienced one or two episodes of decompensation. (Tr. 329-30.) Fletcher argues that the ALJ adopted the foregoing conclusions and that because he did so, he was required to adopt all other determinations Reddy made, and Fletcher argues that the ALJ did not do so.[2] He argues that the ALJ made findings in

---

[1] The RFC is the most a claimant can do despite his impairments. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

[2] The ALJ did not adopt all of the determinations Dr. Reddy made in regard to Fletcher's limitations. Dr. Reddy determined that Fletcher experienced mild limitations in maintaining social functioning while the ALJ determined that Fletcher experienced moderate difficulty in maintaining social functioning. (*Compare* Tr. 14 and Tr. 329.)

regard to his mental RFC that were contrary to those Dr. Reddy made and specifically argues that Dr. Reddy determined that he was markedly limited in his ability to understand, remember, and carry out detailed instructions and that the ALJ determined that he could understand, remember, and carry out detailed instructions without limitation.

Fletcher then argues that the ALJ's stated reasons for rejecting Dr. Reddy's opinions are not supported by substantial evidence and further argues that there is no evidence from any physician in the record that would support the ALJ's determination that he could understand, remember, and carry out detailed instructions. He argues that remand is required because the ALJ rejected Dr. Reddy's opinions regarding his ability to perform work-related mental activities but pointed to no other medical opinion on the subject. In his final argument, Fletcher contends the ALJ's error was not harmless because had the ALJ adopted Dr. Reddy's opinion, he would not have found that Fletcher was capable of performing the jobs of janitor, laundry worker, and dishwasher. In connection with this argument, Fletcher contends the Dictionary of Occupational Titles ("DOT")[3] assigns reasoning levels to the jobs that require a worker to carry out detailed instructions which, he argues, is contrary to Dr. Reddy's opinion.

## III. Discussion

Fletcher's argument that the ALJ rejected Dr. Reddy's opinion is without merit. Dr. Reddy indicated, by checking a box on an RFC form, that Fletcher was markedly limited in his ability to understand, remember, and carry out detailed instructions. (Tr. 341.) The ALJ acknowledged and accommodated Dr. Reddy's opinion by determining that Fletcher was limited to working in jobs that

---

[3] The DOT, published by the United States Department of Labor, is a comprehensive listing of jobs existing in the United States. For each listed job, the DOT indicates the specific tasks and responsibilities of that job in addition to the strength, education, and vocational preparation requirements. Dictionary of Occupational Titles, http://www.oalj.dol.gov/libdot.htm (last visited Feb. 10, 2010).

4

involve non-complex work. (Tr. 18, 43.) Fletcher's argument that the ALJ found that he could perform jobs involving "detailed instructions" should therefore be rejected. The ALJ did not find that Fletcher could perform such work. To the contrary, he limited Fletcher to non-complex work, and a commonsense understanding of the term "non-complex work" compels a conclusion that such work would not involve detailed instructions. The definitions of the terms "detailed" and "complex" compel the same conclusion. "Detailed" is an adjective that describes something that is marked by abundant detail or thoroughness in treating small items or parts. MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 330 (11th ed. 2007). "Complex" is an adjective that describes something that is composed of two or more units or parts. *Id*. at 254. It follows that something characterized as "non-complex" has only one part and cannot be said to be "detailed." *See id*. at 254, 330. Thus, the ALJ's determination that Fletcher can perform non-complex work – work that would involve one-part tasks rather than detailed tasks – does not conflict with Dr. Reddy's opinion that Fletcher was markedly limited in his ability to deal with detailed instructions. *See e.g, Dudley v. Sullivan*, No. 91 C 5715, 1992 WL 265848, at *2-3 ((N.D. Ill. Sept. 24, 1992) (psychologist determined that the claimant was markedly limited in his ability to deal with detailed instructions and the ALJ (as the ALJ in this case) thus found that the claimant was limited to non-complex work).

Fletcher's argument that the ALJ's RFC is not supported by substantial evidence is without merit. The ALJ's RFC is supported by medical opinion and by statements Fletcher made on application documents and at the hearing. The medical opinion supporting the ALJ's decision includes those from Dr. Reddy. Dr. Reddy stated that Fletcher was capable of working in jobs that involve simple instructions and decisions, that he could interact adequately with co-workers and supervisors, and that he could respond appropriately to changes in routine work settings. (Tr. 343.)

Dr. Reddy concluded that Fletcher's alleged limitations were not supported by the medical evidence and that he was not wholly credible. *Id.* As noted, the ALJ's RFC determination accommodates the limitations Dr. Reddy found. Evidence from other physicians also support the ALJ's determination. For example, consultative examiner and neuropsychologist Addison E. Gradel, Ed.D., reported that Fletcher was able to calculate serial three additions which were correct for eight of eight calculations and that he repeated three common objects after one trial and was able to recall the three objects after five minutes of interpolated activity. (Tr. 364.) The foregoing evidence supports the ALJ's determination that Fletcher can perform non-complex work.

Fletcher's statements support the same. It is relevant that Fletcher never claimed he was incapable of working because he experienced problems following instructions. Rather, he claimed that his "history" prevented him from obtaining gainful employment. He stated on an application document that his "biggest problem is getting work due to my history." (Tr. 149.) He claimed he was unable to qualify for a job and that employers would not hire him because he could not pass a background check. (Tr. 143; *see* Tr. 363 (reporting same to consulting psychologist); *see* Tr. 451 (reporting same to psychiatrist)). He also claimed employers would not hire him because of his criminal history and history of psychiatric problems. (Tr. 146, 149). Finally, he indicated that he was selective in regard to the type of employment he would accept: Fletcher testified that he wanted to complete his education and re-enter the work force "on a higher level than just going out and flipping burgers." (Tr. 39.) Factors such as the claimant's unwillingness to do a particular type of work or employer hiring practices such as those cited by Fletcher are irrelevant in the Commissioner's analysis in cases in which the claimant's RFC and vocational abilities make it possible for him to perform work that existing in substantial numbers in the national economy.

20 C.F.R. §§ 404.1566(c), 416.966(c).

Fletcher's final argument – that the ALJ erred at the fifth step of the sequential evaluation process because he determined Fletcher could perform work that would require him to engage in detailed tasks – does not require remand. Pointing to information in the DOT, Fletcher argues that the jobs of janitor, laundry worker, and dishwasher require a reasoning level of two or higher and that they are therefore jobs that would involve detailed instructions. Fletcher is correct in arguing that the identified jobs require reasoning levels of two or higher. The job of janitor requires a reasoning level of three, *see* DICOT 382.664-010, and the jobs of laundry worker and dishwasher require a reasoning level of two, *see* DICOT 361.684-014; DICOT 318.687-010. These facts, however, do not require a finding that Fletcher is incapable of performing work that exists in significant numbers in the national economy. To put the issue in perspective, the DOT's description of reasoning levels one, two, and three are as follows:

Level one reasoning requires a worker to:

> Apply commonsense understanding to carry out simple one-or-two step instructions. Deal with standardized situations with occasional or no variables in or from these situations encountered on the job.

*See e.g.*, DICOT 363.685-022 (handkerchief presser).

Level two reasoning requires a worker to:

> Apply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations.

*See* DICOT 361.684-014 (laundry worker); DICOT 318.687-010 (kitchen helper (dishwasher)).

Level three reasoning requires a worker to:

> Apply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form. Deal with problems involving several concrete variables

7

>in or from standardized situations.

*See* DICOT 382.664-010 (janitor).

Because the job of janitor would require a worker to deal with problems involving several concrete variables and because the ALJ limited Fletcher to non-complex work, Fletcher would not be capable of performing the job of janitor. *See id.*

However, based on his RFC, Fletcher would be capable of performing the jobs of laundry worker and kitchen helper even though the jobs require reasoning level two. Courts have acknowledged that the ability to perform non-complex work is consistent with reasoning level two. *Bradley v. Astrue*, No. ED CV 07-1660 PJW, 2009 WL 1844357, at *2 (C.D.Cal. June 25, 2009) (citing *Hackett v. Burnett*, 395 F.3d 1168, 1176 (10th Cir. 2005)); *cf. Flaherty v. Halter*, 182 F.Supp. 2d 824, 850 (D. Minn. 2001) (claimant who was capable of performing simple, routine, repetitive work was capable of performing jobs that require reasoning level two). The court in *Meissl v. Barnhart*, 403 F. Supp. 2d 981 (C.D.Cal. 2005), provided sound reasoning for finding the same. In *Meissl* the issue was whether the claimant, who was limited to simple tasks performed at a routine pace, could perform the job of stuffer/machine packager, which is classified in the DOT as requiring a reasoning level of two. *Id*. at 982. The claimant argued that a job requiring reasoning level two required a reasoning level beyond the simple tasks the ALJ determined she could do, and she based her argument on the fact that the word "detailed" is used in the DOT's description of reasoning level two. *Id*. at 982, 983-84.

The court found three reasons to reject the claimant's argument. The court first noted that the claimant sought to equate the DOT's use of the word "detailed" with the Commissioner's use of the word in the regulations. *Id*. at 983. The court rejected such an approach based on the fact that the word "detailed" is used on an either/or basis in the regulations and on a more graduated basis

in the DOT. *Id*. at 984. The court noted that the regulations use the word "detailed" in regard to whether a claimant has an ability to understand and remember instructions; a claimant can either understand and remember short and simple instructions or understand and remember detailed or complex instructions. *Id.* at 984 (citations omitted). Turning to the DOT, the court noted that the publication uses "a much more graduated, measured and finely tuned scale starting from the most mundane [simple instructions], moving up to the most complex." *Id*. (citation omitted). The court held that to equate the relevant terms used in the regulations with those in the DOT would necessarily mean that a claimant who was unable to deal with detailed instructions would be precluded from performing all jobs requiring a reasoning level of two or higher and "such a 'blunderbuss' approach is not in keeping with the finely calibrated nature in which the DOT measures a job's simplicity." *See id*.

The court next noted that the DOT places the qualifier "uninvolved" on the term "detailed." *Id*. In the court's words: "While reasoning level two notes the worker must be able to follow 'detailed' instructions, it also . . . down-played the rigorousness of those instructions by labeling them as being 'uninvolved,'" and uninvolved reasoning does not denote a high level of reasoning. *Id*. at 984-85. Turning to its third reason for rejecting the claimant's argument, the court noted that jobs designated as requiring a reasoning level of one require "only the slightest bit of rote reasoning" and included such jobs as counting cows as they come off a truck, pasting labels on filled whiskey bottles, and tapping the lids of cans with a stick. The court held that a person, such as the claimant, who was able to understand and follow simple repetitive instructions possessed a level of sophistication in reasoning above that required at reasoning level one and in such jobs. *Id.* The court concluded that although the DOT's definition of the job at issue indicated the worker would

9

be required to understand and carry out detailed instructions, "it specifically caveats that the instructions would be uninvolved" and that the claimant was therefore capable of performing the job. *Id*. at 985.

The reasoning in *Meissl* is sound and should be applied in this case. The ALJ in this case determined that Fletcher is capable of performing non-complex work. The reasoning required to perform the jobs of dishwasher and laundry worker, which the ALJ determined Fletcher can perform, may involve detailed instructions but they are "uninvolved" instructions – *that is*, simple or non-complex instructions. *See* DICOT 361.684-014 (laundry worker); DICOT 318.687-010 (kitchen helper (dishwasher)). As a final note, Fletcher claimed during the application process that he prepared meals, performed household chores, worked with a children's advocacy group, and completed "odd jobs" for family and friends. (Tr. 143, 148.) His ability to perform such work supports the ALJ's determination that he was capable of performing the mental requirements of a dishwasher and laundry worker.

At the fifth step the burden shifts to the Commissioner to show that the claimant is capable of performing work available in the national economy. *Perez v. Barnhart*, 415 F.3d 457, 462 (5th Cir. 2005) (citation omitted). Once the Commissioner makes this finding, the burden of proof returns to the claimant to rebut the finding. *Id.* The Commissioner has carried the burden of proof in showing that Fletcher is capable of performing work that exists in substantial numbers in the national economy, and Fletcher has not successfully rebutted the Commissioner's determination. The Commissioner's decision should therefore be affirmed.

**IV.** **Right to Object**

A copy of this report and recommendation shall be served on all parties in the manner

provided by law.  Any party who objects to any part of this report and recommendation must file specific written objections within fourteen days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(1)-(2).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

     Dated:        March 31, 2010.

                                          NANCY M. KOENIG
                                          United States Magistrate Judge